# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**J & J SPORTS PRODUCTIONS, INC.,**

    Plaintiff,

    v.                                              Case No. 16-CV-1366

**HORACIO M. SANCHEZ,**
   *individually doing business as El Rodeo Bar,*

    Defendant.

## DECISION AND ORDER FOLLOWING COURT TRIAL

On October 12, 2016, J & J Sports Productions, Inc., filed a complaint alleging that Horacio M. Sanchez knowingly and willfully violated 47 U.S.C. §§ 605 and 553 by unlawfully intercepting and exhibiting a pay-per-view boxing match at El Rodeo Bar on October 12, 2013. *See* Complaint, ECF No. 1. The matter was randomly assigned to this Court, and the parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 3, 13 (citing 28 U.S.C. § 636 and Fed. R. Civ. P. 73(b)).

Mr. Sanchez has conceded that he is liable under § 605. *See* Minute Sheet of Final Pretrial Conference, ECF No. 24. On April 23, 2018, a court trial was held on damages. *See* Hearing Minutes of Court Trial, ECF No. 28. The Court did not require post-trial submissions, but J & J Sports has filed one. *See* Plaintiff's Post-Trial Brief, ECF No. 30. J & J Sports also has submitted its fee petitions. *See* Affidavit of Peter S. Balistreri, ECF No. 31; Declaration of Thomas P. Riley, ECF

No. 32. In light of all the materials presented, the Court will grant judgment in favor of J & J Sports in the amount of $7,274.29.

## I. Findings of Fact

1. On October 12, 2013, Timothy Bradley defended his World Welterweight Championship against Juan Manuel Marquez at the Thomas & Mack Center in Las Vegas, Nevada. *See* Affidavit of Lisa Steinbacher, Exhibit 1.

2. The promotor of the fight, Top Rank, Inc., granted J & J Sports Productions, Inc., the right to distribute the fight, including undercard bouts and the entire television broadcast, via closed circuit television and encrypted satellite signal. *See* Closed Circuit Television License Agreement, Exhibit 6.

3. J & J Sports had sublicensing agreements with various commercial establishments throughout North America allowing them to publicly exhibit the Broadcast to their patrons.

4. Only three Wisconsin establishments purchased the Broadcast: a Buffalo Wild Wings in Brookfield, a Buffalo Wild Wings in Wauwatosa, and a sports bar in Madison.

5. The Broadcast was shown on one television located behind the bar at El Rodeo Bar, 1586 South Pearl Street, Milwaukee, Wisconsin 53204. *See* Photographs of El Rodeo Bar, Exhibit 2.

6. Horacio M. Sanchez owned and operated the Bar on October 12, 2013. *See* Renewal Alcohol Beverage License Application, Exhibit 4.

7. On October 12, 2013, the Bar was managed by Felipe Arias.

8. Mr. Arias had ordered the Broadcast through Dish Network, which charged the residential rate. *See* Residential Customer Agreement, Exhibit 5; Dish Network box, Exhibit 7.

9. Mr. Sanchez paid the Dish Network bill.

10. There were twelve people inside the Bar at the time of the Broadcast, including nine patrons and three employees.

11. The Bar usually had more than nine patrons on a given Saturday night.

12. The Bar did not charge a cover fee on October 12, 2013.

13. The Bar did not advertise the Broadcast.

14. The Bar did not offer any special promotions or drink specials on the night of the Broadcast.

15. The Bar has a capacity of about thirty people.

16. The commercial rate for showing the Broadcast at an establishment with a capacity of 1–100 people was $1,600.00. *See* Rate Card, Exhibit 3.

17. As of April 2018, the Bar was still open, but it was not operated by Mr. Sanchez.

18. Mr. Sanchez was in the bar business for about twenty years.

19. Prior to this incident, Mr. Sanchez had never been accused of piracy.

20. The attorney fees and costs attributable to this action are $7,024.29. *See* Balistreri Aff. p. 2; Exhibit 1 to Riley Decl., ECF No. 32 at 4–7.

## II. Analysis

The Communications Act of 1934, as amended by the Telecommunications Act of 1996, prohibits the unauthorized use of intercepted satellite communications. *See* 47 U.S.C. § 605(a). Any party aggrieved by such conduct may sue the violator in federal court, 47 U.S.C. § 605(e)(3)(A), for recovery of actual or statutory damages, 47 U.S.C. § 605(e)(3)(C). The amount of damages is left to the discretion of the district court. The statute allows an award of statutory damages between $1,000 and $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). If, however, "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may award enhanced damages of not more than $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii). Conversely, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section," the court may reduce the damages award to as little as $250. 47 U.S.C. § 605(e)(3)(C)(iii). A prevailing party is also entitled to attorney fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

### A. Statutory damages

Mr. Sanchez testified at trial that he had no intention to "steal" the Broadcast. According to Mr. Sanchez, his bar manager at the time, Mr. Arias, ordered satellite service from Dish Network on behalf of the Bar. The box containing the satellite dish corroborates this testimony, as it was addressed only to Mr. Arias. While Mr. Sanchez was present during the dish's installation, he claims to have never seen the customer service agreement between Mr. Arias and Dish

4

Network. Mr. Sanchez further testified that, whenever the Bar ordered a pay-per-view event—including the Bradley-Marquez fight—Mr. Arias called Dish Network and simply provided the Bar's address and the number located on the satellite receiver. The only detail Mr. Sanchez discussed with Mr. Arias ahead of time was the price of the event. And Mr. Sanchez always paid the bill, believing that he had been charged the proper rate.

Mr. Sanchez's testimony is credible and uncontroverted by J & J Sports. The Residential Customer Agreement is a standard form agreement; it does not indicate who the customer was, and there is no evidence that Mr. Sanchez received or reviewed it prior to the initiation of this lawsuit. Moreover, on cross-examination, Mr. Sanchez stated that he didn't know that satellite providers charged different rates for their residential and commercial customers. Mr. Sanchez also indicated that he cancelled his satellite subscription because he was unhappy with Dish Network's role in this incident. Based on this evidence, the Court finds that Mr. Sanchez was an innocent violator of § 605(a).

J & J Sports argues that Mr. Sanchez should be held responsible for the actions of his bar manager. *See* Pl.'s Br. 1–2 (citing *J & J Sports Prods., Inc. v. Silvestre*, Case No. 16-CV-523-JPS, 2017 U.S. Dist. LEXIS 4775 (E.D. Wis. Jan. 12, 2017)). But the statute focuses on the knowledge of the violator himself, not third parties or people under his control. *See Joe Hand Promotions, Inc. v. That Place, LLC*, Case No. 11-CV-931, 2012 U.S. Dist. LEXIS 90536, at *12 (E.D. Wis. June 29, 2012) (Joseph, J.). J & J Sports has failed to rebut Mr. Sanchez's testimony that,

5

whether from Mr. Arias directly or from prior experience, he was aware or had reason to believe that his acts constituted a violation of § 605(a).

Having found that damages should be reduced under § 605(e)(3)(C)(iii), the Court must determine the appropriate award in this case. The Bar didn't promote the Broadcast in any way, charge a cover fee, or offer any drink specials, and there were only nine patrons present at the time of its showing—a slow Saturday night, according to Mr. Sanchez. Also, there is no evidence that Mr. Sanchez committed repeated violations of the Act. Given all these circumstances, the Court finds that the minimal amount, $250.00, should be awarded as statutory damages.

**B. Fees and costs**

According to § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." J & J Sports requests $5,930.50 in fees and $1,093.79 in costs. *See* Balistreri Aff. p. 2; *see also* Riley Decl. Ex. 1. These figures are not contested by Mr. Sanchez. The Court also finds that, while these fees and costs are slightly greater than those awarded in similar cases in this district, the amount requested is ultimately reasonable. Accordingly, J & J Sports is entitled to a full fee award and all of its costs.

**III. Conclusions of Law**

Horacio M. Sanchez violated 47 U.S.C. § 605(a) on October 12, 2013, when he unlawfully intercepted the satellite broadcast of the boxing match between Timothy Bradley and Juan Manuel Marquez and exhibited the broadcast at his southside

Milwaukee bar. However, because Mr. Sanchez was not aware and had no reason to believe that his acts constituted a violation of § 605(a), the damages award is reduced to $250.00. J & J Sports also is entitled to its fees and costs, which total $7,024.29.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Clerk of Court shall enter judgment in this action against the defendant and in favor of the plaintiff in the amount of $7,274.29.

Dated at Milwaukee, Wisconsin, this <u>27th</u> day of <u>March</u>, 2019.

**BY THE COURT:**

<u>*s/ David E. Jones*</u>
DAVID E. JONES
United States Magistrate Judge